**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTOINETTE ROSE NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 C 7547 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | Magistrate Judge Michael T. Mason |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Claimant, Antoinette Nelson ("Claimant") brings this motion to reverse the final decision of the Commissioner of Social Security ("Commissioner"), denying Claimant's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under 42 U.S.C. §§ 416(i) and 423(d) of the Social Security Act ("the Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g) and 138(c)(3). For the reasons stated below, Claimant's motion to reverse the final decision of the Commissioner [21] is granted, and the Commissioner's motion for summary judgment [24] is denied.

**I. BACKGROUND**

    **A. Procedural History**

On April 10, 2012, Claimant filed a Title II DIB application and a Title XVI SSI application, alleging a disability onset date of January 6, 2012. (R. 186–98.) Plaintiff

later amended her disability onset date to May 26, 2011. (R. 14, 34.) Her claim was denied initially on July 31, 2012, and again upon reconsideration on January 28, 2013. (R. 119–22, 128–36.) Claimant filed a hearing request on January 31, 2013 pursuant to 20 C.F.R. § 404.929 *et seq.* (R. 146–48.) On October 29, 2014, the ALJ issued a written decision denying Claimant's claims for DIB and SSI. (R. 11–24.) Claimant then requested review by the Appeals Council. (R. 9–10.) On May 27, 2016, the Appeals Council denied her request for review, at which time the ALJ's decision became the final decision of the Commissioner. (R. 1–6); *Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). Claimant subsequently filed this action in the District Court.

**B. Medical Evidence**

Claimant seeks DIB and SSI for disabling conditions stemming from a bulging disc, pinched nerves in back, and back problems. (R. 227.)

**1. Relevant Medical Records**

On April 14, 2011, Claimant saw Dr. Dallas Bogner at Thedacare Physicians and reported intermittent pain in her lower back. (R. 473.) She was referred to physical therapy and physiatry. (R. 477.) Claimant was again recommended physical therapy as well as steroid injections on June 24, 2011. (R. 596–98.)

On April 30, 2012, Claimant saw Dr. Karl Greene, who reported that Claimant's symptoms have failed to respond effectively to chiropractic interventions, physical therapy interventions, and the use of nonsteroidal anti-inflammatory medications and a recent lumbar injection. (R. 613–15.) A cervical MRI taken on May 4, 2012 revealed minimal to mild degenerative cervical spondylosis and disc bulging. (R. 611.)

On September 21, 2012 Claimant saw Dr. Bogner regarding low back pain and depression. (R. 640.) Dr. Bogner opined that depression was a new diagnosis due to the pain and losing custody of her children. (R. 641.) On October 5, 2012, Claimant reported that her pain was at a five out of ten and that the medication allowed her to function. (R. 634.) Dr. Bogner noted that Claimant had a steroid injection that was possibly mildly helpful and had been meeting with physical therapy. (*Id.*) Claimant's depression was listed as severe. (R. 635–36.)

Claimant presented to Dr. Ashley Warmoth on October 17, 2013 regarding her depression. (R. 649.) Claimant had started Prozac one month prior, but was not noticing any improvement overall. (*Id.*) Dr. Warmoth filled out a Mental Health Questionnaire and opinion Residual Functional Capacity ("RFC") on July 8, 2013. (R. 720–22.) Dr. Warmoth indicated that Claimant was diagnosed with depression and that her limitations could be expected to last for twelve months or longer. (R. 721.) Claimant was noted to have moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, moderate deficiencies of concentration, persistence or pace; and there was insufficient evidence to determine whether there were episodes of deterioration or decompensation. (R. 722.) Dr. Warmoth also estimated that Claimant would be absent from work about four days per month as a result of her impairments. (*Id.*)

**2. Agency Consultants**

On July 31, 2012, State Agency consultant Dr. Pat Chan reviewed Claimant's medical evidence of record and opined that she was not disabled. (R. 73–82.) Dr. Chan determined that Claimant had some exertional limitations and that Claimant can

occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8 hour work day, sit about 6 hours of a normal work day and should avoid stooping frequently. (R. 79.) He opined that she would have "unlimited" ability to kneel, crouch and crawl. (R. 79–80.) Dr. Chan also considered Listing 1.04 due to Claimant's impairments. (R. 78.) Susan Donahoo, Psy.D., reviewed Claimant's file on January 28, 2013 and considered Claimant's condition under Listing 12.04. (R. 102.) Dr. Donahoo stated that Claimant had no restriction of activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (*Id.*) Dr. Ronald Shaw reviewed Claimant's file on January 25, 2013 and gave the same RFC finding in regards to exertional limitations as Dr. Chan and opined that Claimant was not disabled. (R. 103–04, 106.)

### C. Claimant's Testimony

At the date of the hearing, Claimant was thirty-three years old and living with her fiancé and six-year old daughter. (R. 35.) She had no income but received $30 of Food Share a month. (R. 36.) Claimant worked for Countrywide Paramedics doing drug and alcohol testing from 2009-2012, but she stopped the part-time work in 2012 after moving to Wisconsin and because the job required her to sit or stand for too long. (R. 40-41.) When asked to explain in her own words why she felt she was disabled she stated that she had been struggling since 2007, when she began having back problems. (R. 42.) Movements such as bending, lifting, stretching, walking for long periods of time, sitting for long periods of time, and doing everyday things had become very

difficult. (*Id.*) The back pain was all through her back, and she also had pain in her shoulder and neck. (R. 44.)

## II. LEGAL ANALYSIS

### A. Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but will not "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

While the ALJ "must build an accurate and logical bridge from the evidence to [his] conclusion," he need not discuss every piece of evidence in the record. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). At a minimum, the ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (*quoting Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985) (internal quotations omitted)).

5

### B. Analysis Under the Social Security Act

In order to qualify for DIB or SSI, a claimant must be "disabled" under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon,* 270 F.3d at 1176. Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The claimant has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

The ALJ applied this five-step analysis. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of May 26, 2011. (R. 16.) At step two, the ALJ found Claimant suffered from the following severe impairments: obesity, degenerative disc disease and depression. (*Id.*) At step three,

the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-18.) At step four, the ALJ determined that Claimant had the RFC to perform light work as defined in 20 C.F.R. 404.1567(c) and 416.967(b), except that she is limited to unskilled work; she must be allowed to change positions between sitting and standing every thirty minutes; she will be off task up to 5% of the workday, in addition to regularly scheduled breaks; she is unable to climb ladders, ropes and scaffolds; she can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs; and she can occasionally interact with the public. (R. 18.) The ALJ found that Claimant was unable to perform any past relevant work. (R. 23.)

Lastly, at step five, the ALJ found that through the date last insured, given Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers that Claimant could perform, such as hand packager or mail clerk. (R. 23-24.) Therefore, the ALJ found that Claimant had not been under a disability since May 26, 2011 through the date of the decision. (R. 24.)

Claimant argues that: (1) the ALJ's step three and RFC determinations were erroneous; (2) the ALJ's credibility determination was patently wrong; and (3) the ALJ's step five determination was erroneous.[1]

**1. The RFC Determination was Not Supported by Substantial Evidence.**

In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). Claimant argues that the ALJ did not support his finding that she could perform light work because he did not provide a "function-by-

---

[1] Claimant did not file a reply to address the arguments raised by the Commissioner.

function" assessment of her tolerances for work-related capacities and did not provide a narrative discussion of her work-related capacities. (Dkt. 22 at 9–12.)

The Court notes that, "[a]lthough the RFC assessment is a function-by-function assessment, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. Appx. 652, 657 (7th Cir. 2009) (internal quotations and ellipses omitted). In the narrative discussion, an ALJ must consider all relevant evidence and may not omit entire lines of evidence that support a finding of disability. *Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010.)

Here, the ALJ focused on Claimant's activities of daily living to determine that she has the capacity for work. (R. 21.) The ALJ stated that Claimant's "reasonably good mental, social and physical function on examination as well as the sporadic conservative treatment suggest a capacity for work, a finding confirmed by [C]laimant's activities." (*Id.*) The ALJ noted that Claimant is able to prepare simple meals, though she may need to sit at times, is able to clean the house and do laundry, though she needs to take breaks and it takes longer, drives a car, shops in stores and cares for a pet and her daughter. (*Id.*) The ALJ then stated that Claimant's treatment records document sporadic and conservative care. (R. 20.) In regards to addressing Claimant's depression, the ALJ found that Claimant's mental status examinations had been relatively benign and treatment minimal. (*Id.*) The ALJ also indicated that the RFC assessment addresses her depression by providing that Claimant is limited to unskilled work and that she will be off task up to 5% of the workday. (R. 21.)

First, the Court notes that the ALJ refers to Claimant's treatments as sporadic and conservative yet makes no mention of her testimony at the hearing that she had financial troubles and no access to a car. (R. 51.) The ALJ heard this testimony, which is also supported by the record (R. 724), yet he did not mention Claimant's explanation in his decision which draws this Court to conclude the ALJ did not properly consider it. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ should have considered claimant's "inability to pay for regular treatment and medicine."); SSR 96–7P[2], 1996 WL 374186, at *7 (ALJs must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"); *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir.2014) (remanding to agency where ALJ made no attempt to determine reason for conservative treatment). An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013); See *also Craft,* 539 F.3d at 679.

Finally, in considering the record before the Court, it is unclear how the ALJ concluded that Claimant would be off task up to 5% of the work day. Instead, the ALJ merely stated that the off-task time accounts for Claimant's depression and pain complaints. (R. 21.) *See Barrett v. Barnhart*, 355 F.3d 1065, 1066–67 (7th Cir. 2004) (finding reversible error when the ALJ determined that claimant could stand for two hours because there was no medical evidence to support such a conclusion.) The RFC determination should include a discussion describing how the evidence, both objective

---

[2] Superseded by SSR 16-3p. The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." See SSR 16–3p at *1, 2016 WL 1119029 (effective March 28, 2016).

and subjective, supports the ultimate conclusion. SSR 16–3p at *1, 2016 WL 1119029 (effective March 28, 2016); *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir. 2006); *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). An ALJ is not allowed to "play doctor" by using his own lay opinions to fill evidentiary gaps in the record. *See Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Suide*, 371 Fed.Appx. 684, 690 (7th Cit. 2010).

Because the ALJ did not address significant contrary lines of evidence when crafting that RFC, the ALJ did not provide substantial evidence to support his finding that Claimant's medical record and reported daily activities demonstrated an ability to perform light work. Accordingly, the Court remands.

**a. The ALJ's Review of Listing 1.04 was Sufficient.**

Claimant argues that no record evidence was advanced to support the ALJ's finding that Claimant did not meet Listing 1.04. (Dkt. 22 at 6–8; R. 16–17.) Listing 1.04 refers to several disorders of the spine, resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. 20 C.F.R. Pt. 404, Sbpt. P, App. 1 § 1.04.

Here, the ALJ wrote that "the undersigned evaluated the claimant's back disorder under pertinent listing 1.04, but there is no documentation of nerve root compression characterized by neuro-anatomic distribution of pain, motor loss accompanied by sensory or reflex loss, and positive straight leg raise testing both sitting and supine: spinal arachnoiditis; or stenosis resulting in pseudoclaudication." (R. 17.) Although the

ALJ's step three analysis was certainly cursory, Claimant's arguments as to why the ALJ erred at this step are without merit.

First, Claimant does not direct the Court to any evidence to show a disorder named in listing 1.04 existed, but instead argues that the kind of pain described by Claimant is equivocal to pseudoclaudication and arachnoiditis while conceding that the terms do not appear in the medical records. (Dkt. 22 at 7.) Claimant offers a lay opinion as to her medical conditions, but fails to establish that they are sufficiently documented in the medical records in order to support a finding of disability. In fact, there is no medical opinion that Claimant's impairments meet or are medically equivalent in severity to Listing 1.04. Instead, the ALJ addressed the fact that there were multiple negative straight leg raising tests as well as normal strength and neurological function on clinical examination. (R. 17, 19-20.)

Second, Claimant argues that the ALJ did not consider the fact the Listing 1.00(B)(2)(b)(2) provides a non-exhaustive list of examples of ineffective ambulation. (*Id.*) The citations to the record made by the Claimant are of little help to the Court as the Claimant does not point out specific examples of evidence of how she meets the listing. (*Id.*)

Accordingly, the Court does not find that remand is appropriate on this issue. However, since this case is being remanded for reason stated above, the ALJ should take the time to analyze this issue in more detail on remand.

**b. The ALJ's Review of Listing 12.04 was Sufficient.**

Next, Claimant argues that the ALJ did not utilize the services of a Medical Expert ("ME") at the hearing and that the ALJ was "incompetent" to render decisions

that should be reserved for a mental health provider. (Dkt. 22 at 9.) First, the Court notes that, "[t]he ALJ is not *required* to order a [consultative examination], but may do so if an applicant's medical evidence about a claimed impairment is insufficient." *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) (emphasis in original) (citing 20 C.F.R. §§416.912(f), 416.917). Additionally, an ALJ's decision regarding whether a medical expert is necessary is inherently discretionary. *See* 20 C.R.F. § 404.1527(e)(2)(iii)(stating that an ALJ may, but is not required to, seek the opinion of a medical expert.)

Further, the ALJ gave an in-depth analysis for his conclusion that Claimant did not meet the criteria of listing 12.04. The court has no trouble following his logical bridge. Additionally, Claimant has the burden of proof at this step, and he has not argued, let alone pointed to supported record evidence, that he met or equaled the listing criteria. No medical opinion or doctor opined that Claimant met this listing. Accordingly, the Court does not find that remand is necessary on this issue.

**2. Claimant's Subjective Symptom Evaluation Requires Remand.**

Claimant next argues that the ALJ's credibility determination is patently wrong because he failed to follow SSR 96-7p. (Dkt. 22 at 13.) Since the ALJ issued his decision in this case, the SSA has issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1. As SSR 16-3p is simply a clarification of the Administration's interpretation of the existing law, rather than a change to it, it can be applied to

12

Claimant's case.  *See Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016); *Hagberg v. Colvin*, No. 14 CV 887, 2016 WL 1660493, at *6 (N.D. Ill. Apr. 27, 2016).  While the Court will rely on the new guidelines under SSR 16-3, the Court is also bound by case law concerning former SSR 96-7p.  *Farrar v. Colvin*, No. 14 CV 6319, 2016 WL 3538827, at *5 (N.D. Ill. June 29, 2016).

Under SSR 16-3, the ALJ must first determine whether the Claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.  Then, the ALJ must evaluate the "intensity, persistence and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities."  *Id*.  An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence.  *Id*. at *5.  In determining the ability of the Claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding.  *Id*. at *4, 9.

SSR 16-3p requires the ALJ to consider the following factors in addition to the objective medical evidence: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of medication; (5) any treatment, other than medication, for relief of pain or other symptoms; (6) any measure the claimant uses to relieve the pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7.  The Court will

13

only reverse the ALJ's credibility finding if it is "patently wrong." *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ's credibility determination is patently wrong if it lacks "any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008).

The ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding. *Goble*, 385 Fed.Appx. at 593. However, the ALJ need not mention every piece of evidence so long as he builds a logical bridge from the evidence to his conclusion. *Id.* In making a credibility determination, the ALJ "may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995.)

Here, the ALJ discounted some of Claimant's subjective allegations due to lack of corroborating objective medical evidence and Claimant's current activities. (R. 19.) The ALJ first discounted Claimant's subjective allegations because MRIs taken in May 2012 and August 2013 revealed degenerative disc disease with a C6-7 disc bulge but not compression. (*Id.*) Next, the ALJ noted that clinical examinations documented some abnormalities such as limited and painful spinal range of motion and a questionable positive straight leg raise test. (*Id.*) The ALJ referenced instances in which Claimant had a negative straight leg raise and another incident where Claimant's range of motion was limited and painful but the provider described Claimant as being "slightly dramatic." (*Id.*)

The ALJ further noted that Claimant's treatment records document sporadic and conservative care and that Claimant sought treatment for her back after not receiving

14

treatment for nine months in order to have disability paperwork completed. (R. 20.) Further, the ALJ addressed the fact that Claimant declined a recommended surgery and that she had not pursued more aggressive treatment strategies that were recommended by a specialist. (*Id.*)

As discussed above, the ALJ did not properly consider Claimant's reasoning and explanation for why she did not pursue certain treatment. *Supra* at 9-10. Claimant testified that doctors had recommended she undergo surgery and she declined because she felt surgery had not worked for her in the past. (R. 46.) The ALJ failed to reference this in his decision. Also, the ALJ put too much emphasis on Claimant's daily activities in determining her ability to do work. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (finding that an ALJ errs in a credibility determination when she failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week).

Accordingly, the Court finds that the ALJ was selective in his discussion of Claimant's medical records and did not properly consider her reasons for conservative treatment, which again can be found in the record and Claimant's testimony, and remand is required. (R. 46, 596.) On remand, the ALJ must clearly explain the subjective symptoms finding and set forth specific reasons for that finding.

### 3. Step Five Determination

Given the need to remand based on the ALJ's RFC determination, the Court cannot properly assess Claimant's arguments pertaining to the VE's testimony at this time. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004)(The ALJ must

determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC usually skews questions posed to the VE.); 20 C.F.R. §§ 404.1520, 404.1545.

On remand, the Court encourages the ALJ to take care and account for the Seventh Circuit's concerns regarding the number of jobs that the VE states are available to Claimant given her RFC. The ALJ is to further ensure that the VE provides a valid explanation of the sources that support such job estimates.

## **CONCLUSION**

For the foregoing reasons, Claimant's motion to reverse the final decision of the Commissioner [21] is granted, the Commissioner's Motion for Summary Judgment [24] is denied, and the decision of the ALJ is remanded to the Social Security Administration for proceedings consistent with this Opinion.

**ENTERED:**

_____
**Michael T. Mason
United States Magistrate Judge**

**Dated: January 16, 2018**